Nellie PERKOWSKI, Personal Representative of the Estate of Richard Perkowski, Deceased, Plaintiff,

v.

CITY OF DETROIT, a Municipal Corporation, William Hart, Inspector McIntosh, Ralph Wilkewitz, James Nowak, David Huggins, Kenneth Jones, Douglas R. White, Earl White, Hazel Spight, and George Jones, Jointly and Severally, Defendants.

Civ. A. No. 91–75808.

United States District Court,
E.D. Michigan, S.D.

July 7, 1992.

Donald D. Unwin, West Bloomfield, Mich., for plaintiff.

Brenda M. Miller, Detroit, Mich., for defendants.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

GADOLA, District Judge.

On April 24, 1992, defendants filed a motion to dismiss pursuant to Rule 12(b)(6) and Rule 12(c) of the Federal Rules of Civil Procedure and for summary judgment pursuant to Rule 56. Plaintiff filed a response May 8, 1992. Pursuant to LR 7.1(e) (E.D.Mich. Jan. 1, 1992), no oral argument was heard.

## BACKGROUND FACTS

The facts underlying the instant action are taken from defendants' brief in support of the instant motion. Plaintiff failed to dispute any of these facts in her response. Plaintiff's decedent, Richard Perkowski, was arrested for driving under the influence of liquor and for manslaughter with a motor vehicle after striking and killing a pedestrian at approximately 8:20 p.m. on February 2, 1989. Perkowski was arrested by City of Detroit police officers Kenneth Jones and David Huggins, both defendants in this action. After the arrest, Officer Huggins had no further contact with Perkowski.

Defendant police officer James Nowak, assigned to the 4th Precinct as the accident investigator, was called to the accident scene where Perkowski had struck the pedestrian. After defendant Nowak prepared a State of Michigan Official Traffic Accident Report, he had no further contact with Perkowski.

Perkowski was conveyed to the 4th Precinct, where defendant police officer Kenneth Jones read him his chemical test rights at 11:30 p.m. Police officer Laura Herron then conducted the first breathalyzer exam of Perkowski at 11:35 p.m. Officer Herron reported breathalyzer results at 11:35 p.m. and 11:40 p.m., approximately three hours after the accident. The results of both exams were the same, registering a blood alcohol content of 0.13%.

Officer Herron advised Perkowski of his constitutional rights at 11:40 p.m. Perkowski refused to sign or initial the certificate of notification regarding his rights, stating, "It's not in my benefit." Defendants' ex. A. Perkowski told Officer Herron that he had heard everything she said regarding the notification of his rights.

At 11:55 p.m. Officer Herron attempted to conduct an interview for the Detroit Police Department Alcoholic Influence Report. Perkowski refused to answer any questions, including those asking whether he was hurt or ill and those seeking the identity of any doctor with whom he may have been treated. Perkowski informed Officer Herron that he refused to answer questions during the interview because they were "stupid" questions. Defendants' ex. B. Officer Herron completed her interview with Perkowski at approximately 11:58 p.m.

Defendant police officer Douglas White, 4th Precinct doorman, removed all of Perkowski's personal items except his clothing and led him into Cell Block No. 2 at or about midnight. Perkowski never requested any medical treatment or attention, nor did he give any officer any indication of a potential for self-inflicted harm while he was at the 4th Precinct. Defendant Officer White indicated that Perkowski appeared "calm and slightly defiant" when placed in his cell. Defendants' ex. D. At that time Perkowski refused to sign the fingerprint card, stating, "I'm not signing anything." Id.

Between midnight and 12:10 a.m., William Black occupied the cell immediately across from Perkowski. Black issued a statement in which he described his observations during those minutes. Defendants' ex. E. Black recalled that when Perkowski asked Officer White what he was charged with, Officer White told him that he was charged with "DUIL" and that there might be more charges. Id. Black also recalled that Perkowski attempted to engage Black and an occupant of the cell next to him in conversation. Finally, Black stated that after Perkowski questioned him about his court appearance for the following day, he heard Perkowski say, "If you guys aren't going to help me." Id. At that time Black was pretending to be asleep. Id.

At 12:10 a.m. defendant Officer White discovered Perkowski hanging from the bars of his cell. Officer White requested and received assistance in providing emergency medical treatment to Perkowski from the following defendants: Officer Earl Scott, Officer Hazel Spight, and Officer George Jones. None of these defendants had any previous contact with Perkowski. Defendant Sergeant Ralph Wilkewitz was the officer in charge of the 4th Precinct desk when he was notified by Officer White of the suicide.

Perkowski was taken to Detroit Receiving Hospital and admitted at 12:37 a.m. February 3, 1989. He was listed to have expired at 12:39 a.m.

Plaintiff, as personal representative of Perkowski's estate, filed the instant action under 42 U.S.C. § 1983, alleging violations of the fourth, eighth and fourteenth amendments. Plaintiff conceded in her response brief, however, that "neither the fourth or eighth amendments to the Constitution is applicable to this case." Plaintiff's resp. at 2.

## STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that

> [a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." [Citation omitted]. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the non-movant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the

nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991).

## ANALYSIS

■ The United States Court of Appeals for the Sixth Circuit recently issued an opinion in *Barber v. City of Salem,* 953 F.2d 232 (6th Cir.1992). In *Barber,* the administrator of a pretrial detainee's estate brought suit under 42 U.S.C. § 1983, against the City of Salem, Ohio, and some of its police officers following the detainee's suicide. The Sixth Circuit affirmed the district court's order granting summary judgment to the officers and the city. The *Barber* decision, rendered in January 1992, is directly on point.

In *Barber,*

plaintiff [argued] that defendants violated the decedent's due process rights by exhibiting deliberate indifference to his medical needs in a number of ways: (1) the failure to Officers Esterly, Bradley, Hardy, and Petrachkoff to properly screen Kenneth Barber for suicidal tendencies and to take proper precautions to deter his suicide, and (2) the failure of the City of Salem, Mayor Sell, and Police Chief Sommers to train police officers to detect suicidal tendencies and to take precaution to deter suicide including the failure to modify the jail in such a way as to discourage suicides.

*Id.* at 236.

In the instant action, plaintiff claims that decedent suffered a deprivation of his constitutional rights to personal safety, nonpunitive prison conditions and adequate medical treatment. Plaintiff's resp. at 3. Regarding decedent's right to personal safety, plaintiff relies on *Davis v. Holly,* 835 F.2d 1175 (6th Cir.1987), for the proposition that Perkowski had "the right to protection form [sic] self-injury...." Plaintiff's resp. at 4. However, *Davis* involved the rights of "a mentally retarded person confined to a state institution." *Davis,* 835 F.2d at 1181. Plaintiff also claims that the conditions of confinement were punitive because of the defendants' failure to provide proper intake screening, failure to adequately monitor intoxicated detainees, refusal to eliminate detainees' access to horizontal bars, and failure to remove detainees' items of dress. Plaintiff's resp. at 5. Finally, plaintiff claims that decedent was denied adequate medical treatment by defendants' failure to prevent an intoxicated, depressed detainee from committing suicide. *Id.* at 6. Taken in their entirety, plaintiff's claims simply constitute a restatement of the claims alleged in *Barber.*

In *Barber* the Sixth Circuit issued the following standard regarding liability in cases like these:

... the proper inquiry concerning the liability of a City and its employees in both their official and individual capacities under section 1983 for a jail detainee's suicide is: whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs.

*Barber,* 953 F.2d at 239–40. In applying this standard to the facts in *Barber,* the Sixth Circuit stated

In this case, the decedent did express concern over his job, his engagement, and his ability to obtain custody of his young son due to his arrest. However, such a reaction to an arrest for driving under the influence of alcohol could not be considered abnormal and would not alert the jail authorities to a strong likelihood that Kenneth Robert Barber would commit suicide. His death is indeed a sad and unfortunate occurrence. However, the failure to take special precautions in this case as to suicide prevention does not amount to a constitutional violation of deliberate indifference to Kenneth Robert Barber's serious medical needs. Moreover, where no constitutional violation exists for failure to take special precautions, none exists for failure to promulgate policies and to better train

personnel to detect and deter jail suicides.

*Id.* at 240.

In the instant action there is nothing in the pleadings or in the record, including plaintiff's 346–paragraph complaint, which represents that Richard Perkowski gave any defendant any indication whatsoever of a strong likelihood that he would take his own life. In the absence of such evidence, defendants are entitled to summary judgment.

### ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that defendants' motion for summary judgment is GRANTED.