Eliot Winfred AARON, Plaintiff,

v.

Oakland County Sheriff Deputy Jeffery FINKBINDER; Marsha Ayer, R.N.; Barbara Draper, R.N.; Nancy Jenson, R.N., f/k/a Nancy Rogers, R.N., individually, jointly and severally, Defendants.

No. 91–73627.

United States District Court,
E.D. Michigan, S.D.

June 19, 1992.

Peter J. Lyons, Detroit, Mich., for plaintiff.

John H. Dise, Jr., G. Gus Morris, Detroit, Mich., for defendants.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff filed this lawsuit alleging violations of 42 U.S.C. § 1983, and his eighth amendment right to be free from deliberate indifference to his serious medical needs. Defendants filed their motion for summary judgment June 3, 1992. Plaintiff filed a response and defendants filed a reply. Oral argument was heard June 18, 1992.

### FACTS

Plaintiff Eliot Aaron is an insulin-dependent diabetic. On October 31, 1989, plaintiff appeared in Oakland County Circuit Court for sentencing on a conviction for receiving and concealing stolen property in excess of $100.00, which was arrived at by plea. At

the time, plaintiff was on 58 units of Lente (insulin), which he was supposed to take by injection daily before breakfast. Plaintiff did not take his insulin on the morning of October 31, 1989, because he "didn't expect sentencing" and "thought it was just another court date." Plaintiff was sentenced to four months at the Oakland County Jail.

Plaintiff was taken to a detention cell at the courthouse and was transported to a holding cell at the Oakland County Jail at approximately 3:00 p.m. According to jail records, plaintiff underwent medical screening/booking at 4:44 p.m. by defendant Jeffrey Finkbinder.[1] Finkbinder has no independent recollection of plaintiff. According to plaintiff, he was booked at 6:00 p.m. by deputy See. Plaintiff states that he told the booking officer that he was a diabetic and had not had any insulin that morning. Further, plaintiff stated that the booking officer called the nurse and/or clinic with this information. Plaintiff was then placed in the holding tank.

Plaintiff claims to have written out sick-call slips on the morning of November 1, 1989. According to jail clinic records, four sick-call slips were written out by plaintiff, but only one of those slips was dated November 1, 1989. This one slip was in plaintiff's handwriting and read "Diabetic haven't had insulin shot in two days." Also on this slip defendant Barbara Draper, a nurse in the jail clinic, wrote " *See in SC." Apparently "SC" means "sick call." Draper testified that, to the best of her recollection, she first saw this sick-call slip in the morning of November 2, 1989, although she does admit that it is possible that she received the slip November 1, 1989. Draper scheduled plaintiff for a sick call for the morning of November 2, 1989.

Plaintiff had contact with defendant nurse Marsha Ayer in the early morning hours of November 2, 1989. Ayer testified that, while she has no independent recollection of plaintiff, she identified her handwriting on a second sick-call slip dated November 2, 1989. Ayer had written on this second slip information given to her by plaintiff. The slip states "diabetic 16 yrs.; Lente 50 u qam; 2,800 cal diet." Ayer further testified that following her meeting with plaintiff, she obtained for him a dosage of 50 units of Lente insulin. Jail records reflect that plaintiff received a shot of 50 units of Lente insulin on November 2, 1989, at 6:00 a.m., which was administered by Ayer.

Plaintiff was seen in the jail clinic by defendant nurse Nancy Rogers/Jansen[2] at 10:30 a.m. on November 2, 1989. After Draper took plaintiff's vital signs, Rogers/Jansen noted that plaintiff had been vomiting due to increased blood sugar and had been having increased thirst and headaches. Rogers/Jansen did a complete examination of plaintiff, including a random blood sugar test, which read 204, indicating a mildly elevated blood sugar level for insulin-dependent diabetics. Rogers/Jansen noted that plaintiff told her he was taking 58 units of Lente insulin. Rogers/Jansen placed plaintiff on a 58 unit qam dosage, and plaintiff was given a vial of liquid glucose to take immediately if he experienced symptoms of low blood sugar. Plaintiff was given instructions to return to the clinic if vomiting reoccurred.

At 5:00 a.m. on November 3, 1989, nurse Marlene Hughes went to plaintiff's cell to administer the 58 units of Lente insulin. The jail medication log reflects that Hughes wrote "5A Insulin held-vomiting-SC this A.M." Insulin was withheld because giving insulin to a diabetic who has not eaten or who had been unable to keep down food can cause the person to go into insulin shock, which is life-threatening. Hughes also did a random blood sugar the morning of November 3, 1989. The test showed a level of 151, lower than the day before and well within the range set for insulin-dependent diabetics.

Plaintiff was seen in the jail clinic by Dr. DeShere on November 3, 1989, at 9:30 a.m. DeShere examined plaintiff and, because of

1. It appears that the correct spelling of deputy Finkbinder's first name is "Jeffrey" and that the caption is incorrect.

2. It appears that the correct spelling is "Rogers/Jansen" and that the caption is incorrect.

plaintiff's dehydration problems, elected to send him to Pontiac General Hospital via ambulance. At the hospital, plaintiff was treated for diabetic keto-acidosis. His random blood sugar had shot up to 856. Plaintiff remained at Pontiac General Hospital for two days and was stabilized. Afterwards, he was returned to the jail with no residual difficulties. Plaintiff received insulin at the jail for the remainder of his incarceration and had no other difficulties. Plaintiff testified that he believes that he has no residual health problems because of this episode at the Oakland County Jail.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the

burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissable at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## ANALYSIS

Plaintiff's allegations that he was improperly denied medical treatment are governed by *Estelle v. Gamble*, 429 U.S. 97, 97

S.Ct. 285, 50 L.Ed.2d 251 (1976). In *Estelle*, the Supreme Court held that:

> ... an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscious of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.* In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.* at 105–106, 97 S.Ct. at 292 (emphasis added) (footnote omitted). After review of plaintiff's allegations, this court finds no genuine issue of material fact which arguably would hold defendants liable under *Estelle*.

■  Plaintiff first contends that defendant Finkbinder was deliberately indifferent to plaintiff's medical needs by failing to record on his medical screening chart that plaintiff needed to be provided with insulin. The computer generated medical screening chart regarding plaintiff shows that the letter "N" was entered after the question "Continued Prescribed Medication." Plaintiff's ex. 3. However, plaintiff admits that the booking officer called and advised the clinic that plaintiff was a diabetic in need of insulin. Aaron dep. at 33. These acts are obviously contradictory. The most that can be said of this incident is that a clerical error was made. There is no showing by plaintiff that the action of defendant Finkbinder was deliberate.

■  Second, plaintiff appears to fault defendant Draper for not immediately calling him to the clinic as soon as he filled out a sick-call slip. The first sick-call slip is dated November 1, 1989. Draper has testified that she did not see this slip until November 2, 1989, at which time she scheduled plaintiff for a sick call. Draper dep. at 10. Draper took plaintiff's vital signs some three hours after receiving the sick-call slip. *Id.* at 10–12. Draper did testify that she could have received the slip November 1, 1989; but this was conjecture. Even if Draper had received the note November 1, 1989, plaintiff saw a clinical health specialist the next morning. These actions were reasonably prompt and do not rise to the level of deliberate indifference to plaintiff's medical needs. *See Donlan v. Smith,* 662 F.Supp. 352, 361 (D.Md.1986) (delay in diabetic prisoner receiving food held not deliberately indifferent), *aff'd,* 820 F.2d 1219 (4th Cir.1987).

■  Third, plaintiff asserts that defendant Rogers/Jansen demonstrated deliberate indifference to his medical needs by misreading or improperly administering the random blood sugar tests and by not taking appropriate precautionary steps when Rogers/Jansen noted plaintiff's nausea and headaches. The fact that Rogers/Jansen took action to alleviate plaintiff's condition shows that she was not indifferent to plaintiff's needs. This claim supports a medical malpractice suit and not a suit brought under section 1983 and the eighth amendment. When boiled down, plaintiff's allegations are grounded in negligence and not deliberate indifference. This is evidenced by plaintiff's expert, who has stated that Rogers/Jansen varied from the appropriate standard of care by not taking plaintiff's blood sugar level once more on November 2, 1989. VanRiper aff. at para. 2. As noted in *Estelle,* a "malpractice [suit] does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292.

■  Finally, plaintiff has filed suit against Ayer for deliberate indifference to his medical needs by giving plaintiff 50 units of insulin rather than 58 units. Ayer testified that the 50 unit dosage was conveyed to her by plaintiff himself. A discrepancy of eight units is clearly not grounds for an eighth amendment or section 1983 claim of deliberate indifference. The fact that Ayer provided plaintiff with any insulin shows a lack of indifference.

Upon the record, deposition testimony, affidavits and exhibits provided, this court can discern neither a cognizable section 1983 or eighth amendment claim nor a genuine issue of material fact favoring denial of summary judgment. Therefore, defendants' motion will be granted.

## ORDER

Therefore, it is hereby ORDERED that defendants' motion for summary judgment is GRANTED, and plaintiff's cause of action is DISMISSED with prejudice.

SO ORDERED.