Mable F. BOBBITT, Plaintiff,

v.

THE DETROIT EDISON COMPANY, a Michigan corporation, City of Detroit, a municipal corporation, Police Officer David Krupinski and Police Officer Brandon Seed, Jointly and Severally, Defendants.

No. CIV. 01–40170.

United States District Court, E.D. Michigan, Southern Division.

Aug. 19, 2002.

Jack H. Bindes, Bindes & Gilbert, Southfield, for Mable F. Bobbitt, plaintiff.

Michael D. Bryant, L. Graham Ward, Ward, Anderson, Bloomfield Hills, Krystal A. Crittendon, City of Detroit Law Department, Detroit, for Detroit Edison Company, Detroit, City of, David Krupinski, Police officer, Brandon Seed, Police officer, defendants.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before the Court is Defendant City of Detroit's motion for summary judgment [docket entry 20]. Pursuant to Local Rule 7.1(e), the Court concludes that oral argument would not aid substantially in the disposition of this motion. For the reasons set forth below, the Court grants the City of Detroit's motion.

## I. BACKGROUND

On August 2, 2000, Plaintiff went to the a Detroit Edison Customer Service Office located at 21000 Grand River Avenue in Detroit, Michigan. Plaintiff intended to pay her Detroit Edison bill, but left after realizing that she had forgotten her check. Plaintiff returned to the Detroit Edison office later the same afternoon, but she did not arrive until after 4:30 p.m., when the office closed.

The parties dispute what occurred next. Although the office closed at 4:30 p.m., and the outside door was shut, there were still other customers waiting in line to enter the office. Plaintiff asked Solomon Jones, a security guard at the office's entrance, if she could enter the office to pay her bill. Plaintiff was either allowed to enter, or forced entry to the office. Although the parties do not agree as to the sequence of events, sometime after entering the office, Plaintiff approached Detroit Edison employees to pay her bill. At that point, the security guard, Solomon Jones, allegedly approached her, placed his hands on her, and asked her to leave. Soon after, someone, apparently a Detroit Edison employee, called the Detroit Police, a move apparently supported by Plaintiff. Sometime later, the manager of the office approached Plaintiff and accepted Plaintiff's check for her utility bill. The manager, however, refused Plaintiff's demand for a receipt. Consequently, Plaintiff refused to leave the office and waited for the Police to arrive.

Approximately thirty minutes later, Detroit Police Officers Brandon Seed and David Krupinski arrived at the Detroit Edison office. The officers arrested Plaintiff for violating the City of Detroit's misdemeanor ordinance proscribing "disorderly conduct" in a public place. Plaintiff alleges that during the arrest, Officer Krupinski "forcibly jerked the Plaintiff's hands behind her back," and then picked her up before throwing her to the floor, where he "put his knee in [her] lower back and forced her head into the floor," injuring her. (Resp. Br. at 4.) Plaintiff alleges that she was physically forced into the police vehicle that transported her to Detroit's Eighth Precinct.

At the Eighth Precinct, Plaintiff claims that she was forced to stand for the approximately five hours she was in custody because her cell in the Precinct's lockup contained only "a four inch concrete slab which she could not sit on [because] [i]t was too low and her back was hurting." (Resp. Br. at 4–5.) Plaintiff also claims that she made multiple requests to be taken to a hospital, but was denied by both the arresting officers and the Eighth Precinct staff. (Resp. Br. at 4–5.)

Plaintiff was charged with disorderly conduct. On October 26, 2000, following a bench trial before the 36th District Court, Plaintiff was acquitted of the charges. The City of Detroit appealed the acquittal to the Wayne County Circuit Court, but subsequently withdrew its appeal.

On or about June 4, 2001, Plaintiff filed a Complaint in Wayne County Circuit Court against Detroit Edison, the City of Detroit, and Police Officers David Krupinski and Brandon Seed. Plaintiff alleged nine different causes of action: (1) assault and battery; (2) negligence of the Detroit Edison Company; (3) violation of ministerial duties; (4) false arrest/false imprisonment; (5) intentional infliction of emotional distress; (6) malicious prosecution; (7) dangerous or defective public building; (8) violations of 42 U.S.C. § 1983 by the individual police officers; and (9) violations of 42 U.S.C. § 1983 by the City of Detroit.

On or about June 28, 2001, the City of Detroit filed a notice of removal in this Court, removing the case pursuant to this Court's original jurisdiction over Plaintiff's federal claims. The City of Detroit now

brings a motion for summary judgment on Plaintiff's claims. This motion addresses only the alleged liability of the City of Detroit, and not the alleged liability of its police officers, Defendants Seed and Krupinski, or of Defendant Detroit Edison.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Tpk. Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477

U.S. at 252, 106 S.Ct. 2505; *see Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995).

## III. ANALYSIS

### A. Governmental Immunity

The City of Detroit maintains that summary judgment is appropriate on Counts I, III, IV, V, and VI of Plaintiff's Complaint (assault and battery, violation of ministerial duties, false arrest/false imprisonment, intentional infliction of emotional distress, and malicious prosecution), because Plaintiff cannot overcome the City's statutory immunity from tort liability. (Def. Br. at 12–13).

As a Michigan municipal corporation the City of Detroit has limited tort liability because it is protected by statutory governmental immunity under M.C.L. § 691.1407. *See Walton v. City of Southfield*, 995 F.2d 1331, 1343 (6th Cir.1993). The statute provides that a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. M.C.L. § 691.1407(1). The statute defines a governmental function as:

> an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law. Governmental function includes an activity, as directed or assigned by his or her public employer for the purpose of public safety, performed on public or private property by a sworn law enforcement officer within the scope of the law enforcement officer's authority.

M.C.L. § 691.1401(f).

The City of Detroit will be held *directly* liable for its torts, therefore, only if the activity in which it was engaged constituted a non-governmental or proprietary function, M.C.L. § 691.1413, or fell within one of the enumerated exceptions to the immunity statute: (1) defective highway, M.C.L. § 691.1402(2) negligent operation of a motor vehicle, M.C.L. § 691.1405 or (3) defective public building, M.C.L. § 691.1406. *See Ross v. Consumers Power Co.*, 420 Mich. 567, 620, 363 N.W.2d 641, 661 (1984).

In response to the City of Detroit's motion, Plaintiff has not asserted any of the exceptions to the governmental immunity statute. In fact, Plaintiff makes essentially no argument at all in opposition to the City of Detroit's motion on this issue. Rather, Plaintiff recites basic legal principles governing vicarious liability. (Pl. Resp. at 5–6.) It appears, therefore, that Plaintiff may be arguing that the City of Detroit is vicariously liable for the alleged torts of Officers Seed and Krupinski.

A plaintiff may argue that a municipality is vicariously liable for the actions of its officers. *See Ross*, 420 Mich. at 621, 363 N.W.2d at 661–62. As the Michigan Supreme Court has held:

> A governmental agency can be held vicariously liable only when its officer, employee, or agent, acting during the course of employment and within the scope of authority, commits a tort while engaged in an activity which is nongovernmental or proprietary, or which falls within a statutory exception. The agency is vicariously liable in these situations because it is in effect furthering its own interests or performing activities for which liability has been statutorily imposed. However, if the activity in which the tortfeasor was engaged at the time the tort was committed constituted the exercise or discharge of a governmental function (*i.e.*, the activity was expressly or impliedly mandated or authorized by constitution, statute, or other law), the agency is immune pursuant to § 7 of the governmental immunity act [M.C.L. 691.1407].

*Ross,* 420 Mich. at 624–625, 363 N.W.2d at 663–664.

■ "It is well-settled that the management, operation and control of a police department is a governmental function and that tort actions against a municipality based on the negligence of its police officers, occurring while the officer is engaged in a discharge of that function, are barred by the doctrine of governmental immunity." *Moore v. City of Detroit,* 128 Mich. App. 491, 496–97, 340 N.W.2d 640, 643 (Mich.Ct.App.1983). Consequently, even if the City of Detroit's police officers did commit the torts Plaintiff alleges, the City of Detroit cannot be held liable for those torts, as the governmental activity in which the officers were engaged, the operation of a police force, constituted the exercise or discharge of a governmental function. The City of Detroit is therefore immune under the governmental immunity act. *See Ross,* 420 Mich. at 624–625, 363 N.W.2d at 663–664. As Plaintiff has not alleged any of the exceptions to the governmental immunity act, the Court grants summary judgment for the City of Detroit on Plaintiff's counts I, III, IV, V, and VI (assault and battery, violation of ministerial duties, false arrest/false imprisonment, intentional infliction of emotional distress, and malicious prosecution).

### B. Count VII Against The City of Detroit: Defective Public Building

Defendant also maintains that it is entitled to summary judgment on Count VII of Plaintiff's complaint, Plaintiff's allegation that the Eighth Precinct lockup, where she was held following her arrest, was a "dangerous or defective public building." (Def. Br. at 14–18.) Although the City of Detroit is generally immune from tort liability when it exercises or discharges a governmental function, *see* M.C.L. § 691.1407, one of the statutory exceptions to governmental immunity is the "public-building" exception. *See* M.C.L. § 691.1406; *Brown v. Genesee Co. Bd. of Commr's,* 464 Mich. 430, 434–35, 628 N.W.2d 471, 473–74 (2001). As set forth below, however, Plaintiff has failed to establish a claim under the public building exception.

Under the public building exception, "[g]overnmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public." M.C.L. § 691.1406. In order to establish a claim under this exception, a plaintiff must demonstrate that:

(1) a governmental agency is involved, (2) the public building in question was open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency failed to remedy the alleged defective condition after a reasonable period or failed to take action reasonably necessary to protect the public against the condition after a reasonable period.

*Kerbersky v. Northern Michigan Univ.,* 458 Mich. 525, 529, 582 N.W.2d 828, 830 (1998).

■ A jail is a "public building" for purposes of the immunity exception. *See Brown,* 464 Mich. at 436, 440, 628 N.W.2d at 474, 477 (Markman, J., concurring). A plurality of the Michigan Supreme Court in *Brown* held, however, that an "inmate" is not a "member of the public" for purposes of the public building exception. *See id.* at 439, 628 N.W.2d at 476. The plurality in *Brown* concluded that:

[j]ail inmates are not members of the public for purposes of the public building exception. Unlike a person who enters a jail, e.g., to meet with an inmate, make a delivery, or apply for a job, an inmate

does not visit a jail as a potential invitee. Instead, inmates are legally compelled to be there. Inmates thus are not within the class of persons the Legislature intended to protect from defects in public buildings.

*Id.* (footnote omitted).

In a concurring opinion, Justice Markman agreed that an inmate was not a member of the public, but based this conclusion upon different statutory language. *See id.* at 446, 628 N.W.2d at 479 (Markman, J., concurring).

■ An "inmate" is "[a] person confined to a prison, penitentiary, or the like." *Black's Law Dictionary* (6th ed.1990). Although Plaintiff asserts that she was not an "inmate" while held at the Eighth Precinct, she admits that she was held until her daughter posted bond for her release. (Pl. Resp. at 5.) Thus, it appears clear that she was confined as an inmate at the Eighth Precinct, in the sense that she was not free to leave. Accordingly, under *Brown*, Plaintiff, as an inmate, may not recover under the public building exception.

Even if Plaintiff was not an inmate, she has failed to establish that a dangerous or defective condition existed at the Eighth Precinct lockup. In her response, Plaintiff, quoting her complaint, alleges the following "defective conditions" of the Eighth Precinct lockup at the time she was detained:

A. Lack of facilities for confinement of female detainees;

B. Lack of adequate facilities for compliance with the applicable regulations of the Michigan Department of Corrections;

C. Inadequate ventilation;

D. Inadequate lighting;

E. Inadequate space allotments;

F. Other dangers and/or defects.

(Pl. Br. at 7.) Plaintiff has adduced no evidence, however, that would establish the existence of any of these alleged defects. Furthermore, when pressed by defense counsel in her deposition to describe the dangerous or defective conditions of the building, Plaintiff identified the following conditions: (1) the lockup cell smelled like urine; (2) the only place to sit was a concrete slab on the floor; (3) the telephone was not working; and (4) the conditions made her feel "suffocated," "closed in," and were "just like in prison." (Pl. Dep. at 199–200; Def. Ex. C.) Plaintiff denies, however, that there was some condition of the lockup that caused her physical injury. (Pl. Dep. at 201; Def. Ex. C.)

The Michigan Supreme Court has held that the public building exception applies where "an injury aris[es] out of a dangerous or defective physical condition of the building itself." *Reardon v. Dep't of Mental Health,* 430 Mich. 398, 409, 424 N.W.2d 248, 253 (1988). The exception "does not contemplate transitory conditions because they are not related to the permanent structure or physical integrity of the building." *Wade v. Dep't of Corr.,* 439 Mich. 158, 168, 483 N.W.2d 26, 30 (1992). Thus, "the public building exception is to be narrowly construed, and does not encompass claims of negligent janitorial care." *Id.* at 170, 483 N.W.2d at 31.

■ Here, Plaintiff's only evidence that the Eighth Precinct lockup was defective is her deposition testimony. As noted above, Plaintiff's complaints are essentially that the lockup was not clean, that there was no place to sit, and that a telephone was not readily available. Even if true, these conditions are "transitory" in nature, and are not the sort of structural conditions that would establish liability under the public building exception. *See id.* As Plaintiff has failed to adduce evidence that the Eighth Precinct lockup contained a dan-

gerous or defective condition, the Court shall grant the City of Detroit's motion for summary judgment on this issue.

### C. Plaintiff's Count IX: Violation of 42 U.S.C. § 1983

■ To succeed with a § 1983 claim, a plaintiff must prove that the defendant or defendants, while acting under color of state law, deprived the plaintiff of a right secured by federal law. 42 U.S.C. § 1983. To establish a municipality's liability for the torts of its agents, a plaintiff must establish that the constitutional injury was caused by action taken "pursuant to official municipal policy of some nature." *Monell v. Dep't of Social Svs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also Johnson v. City of Ecorse*, 137 F.Supp.2d 886, 890 (E.D.Mich.2001) (Gadola, J.) (noting that "a plaintiff must allege sufficient facts to demonstrate the existence of a particular policy, practice or custom which directly caused the harm." (internal quotation omitted)). However, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018.

The City of Detroit maintains that summary judgment is appropriate because Plaintiff has failed to identify any unconstitutional customs, policies, or practices that led to any deprivations of Plaintiff's constitutionally protected rights. (Def. Br. at 20.) In her response Plaintiff attacks the City of Detroit's hiring and training of Officer Krupinski. Plaintiff maintains that "[t]he City of Detroit has hiring policies relative to their policemen," and that "[w]ith respect to a 'Rambo-type' renegade rogue police officer, the City has many duties relative to the hiring and the placing of police officers in and amongst the community." (Pl. Resp. at 9.) As evidence for this claim, Plaintiff has submitted a *Detroit Free Press* article describing an incident wherein Officer Krupinski stood accused of unlawfully shooting a deaf man. (*See* Pl.Ex. A.) Plaintiff argues that this incident shows that the City of Detroit failed in its duty to the public by "releas[ing] a modern day cowboy policeman onto the public without the requisite training in public relations." (Pl. Resp. at 9.) The Court construes Plaintiff's assertions as claims that the City of Detroit maintained inadequate policies for training and hiring its police officers.

The Supreme Court has held that a municipality may be held liable where its failure to provide adequate training to its employees results in a constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). However, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389, 109 S.Ct. 1197. The inquiry involves assessing whether the training program is adequate, and, if the program is inadequate, "whether such inadequate training can justifiably be said to represent 'city policy.'" *Id.* at 390, 109 S.Ct. 1197.

A plaintiff may establish liability based upon a municipality's "policy of not taking reasonable steps to train its employees." *Id.* For example, "the need to train officers . . . can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *Id.* at 390 n. 10, 109 S.Ct. 1197. A plaintiff may also establish liability where "the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless,

are 'deliberately indifferent' to the need." *Id.*

■ Even if Plaintiff suffered a constitutional harm at the hand of Officer Krupinski, Plaintiff has not adduced any evidence that the City of Detroit "failed to provide adequate training for its officers or that it was on notice that its officers were causing harm to citizens in effecting arrests." *King v. Boyd*, No. 98–6668, 1999 WL 1024030, at *3 (6th Cir. Nov.4, 1999). Without further support, Plaintiff's bald assertions and allegations derived from a newspaper article are insufficient to create a genuine issue of material fact.

For similar reasons, Plaintiff's claim that the City of Detroit had inadequate hiring policies is without merit. The Supreme Court has stated that "[t]o prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Board of County Commr's v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Therefore, "the fact that inadequate scrutiny of an applicant's background would make a violation of rights more *likely* cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." *Id.* at 410–11, 117 S.Ct. 1382. Rather, "[a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute

'deliberate indifference.' " *Id.* at 411, 117 S.Ct. 1382.

Here, Plaintiff has failed to adduce any evidence that would demonstrate that the City of Detroit's decision to hire Officer Krupinski constituted deliberate indifference to the risk that a constitutional violation would follow the decision. Plaintiff has offered no evidence that would shed any light at all on the City's decision to hire Officer Krupinski. Again, Plaintiff's citation to allegations in a newspaper article are insufficient to create a genuine issue of material fact.

Finally, Plaintiff alleges that the City of Detroit had a "policy ... to appeal an acquittal on the charge of disorderly conduct, take it to twenty-four hours before a hearing on the appeal and dismiss the case." (Pl. Resp. at 9.) Plaintiff further asserts that, "[u]nder ordinary custom and usage it would have been sufficient to have been defeated in the disorderly conduct charge, but to have taken an appeal under the color of righteousness and law and subsequently withdraw the appeal with almost no notice to the Plaintiff herein, and with the total disregard and disrespect for her counsel, the City has evidenced more disdain for the rights of the citizens of the City of Detroit." (Pl. Resp. at 9–10.) Plaintiff has adduced absolutely no evidence or caselaw in support of this general claim, and accordingly, the Court finds this claim to be without merit.

To survive the City of Detroit's motion for summary judgment, Plaintiff must do more than simply assert that the City of Detroit has harmful policies or customs; she must produce evidence from which a reasonable jury could find in her favor. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Viewing Plaintiff's claims in the light most favorable to her, the Court finds that Plaintiff has not adduced evidence of a genuine issue of material fact, and the

Court shall grant the City of Detroit's motion for summary judgment on Plaintiff's § 1983 claim against the City of Detroit.

## IV. CONCLUSION

For the reasons set forth above, the Court, viewing the evidence in the light most favorable to Plaintiff, concludes that Defendant City of Detroit is entitled to summary judgment with respect to all of Plaintiff's claims against it, including assault and battery, violation of ministerial duties, false arrest/false imprisonment, intentional infliction of emotional distress, malicious prosecution, dangerous or defective building, and 42 U.S.C. § 1983.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of Detroit's motion for summary judgment [docket entry 20] is **GRANTED.**

**SO ORDERED.**