Gerald HOUSE, Patricia Rose House, and Patrick J. McDonald, a minor by his Guardian and Next Friend, Mildred Miller, Plaintiffs,

v.

COUNTY OF MACOMB, Mark Hackel, Robert Stanley, Various John Does, City of Warren, Derick Scott, Randall Richardson, Various Jim Does, and Correction Medical Services, Inc., Defendants.

No. CIV. 01–40345.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 18, 2004.

Ben M. Gonek, Pleasant Ridge, MI, David B. Trivax, Dickow & Trivax, Farmington Hills, MI, Mayer Morganroth, Morganroth & Morganroth, Farbod H. Talab, Talab, Nunley, Southfield, MI, Charles E. Griffiths, Sylvan Lake, MI, for Plaintiffs.

Frank W. Brochert, Plunkett & Cooney (Bloomfield Hills), Kristen M. Tolan, Plunkett & Cooney (Bloomfield Hills), Bloomfield Hills, MI, Peter W. Peacock, Plunkett & Cooney (Mount Clemens), Mount Clemens, MI, John J. Gillooly, Detroit, MI, for Defendants.

### OPINION AND ORDER GRANTING SUMMARY JUDGMENT

GADOLA, District Judge.

This civil action, brought pursuant to 42 U.S.C. § 1983, concerns Plaintiff Patricia House's suicide attempts while in jail. There are three sets of Defendants in this action: (1) the Macomb Defendants: the County of Macomb, Mark Hackel, Robert Stanley, and various John Does; (2) the Warren Defendants: City of Warren, Derick Scott, Randall Richardson, and various

Jim Does; and (3) Defendant Correction Medical Services ("CMS").[1]

Each set of Defendants has filed a motion for summary judgment, and this opinion and order addresses all three motions. Plaintiffs filed responses to all three motions,[2] and the Macomb Defendants as well as Defendant CMS filed reply briefs. The Court elects to proceed without a hearing. *See* E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the Court will grant these three motions.

## I. BACKGROUND

On November 1, 2001, police officers for Defendant City of Warren arrested Plaintiff Patricia House for disturbing the peace after receiving a complaint from her parents, Ronald and Mildred Miller. Mrs. House went to her parents' house to visit her son, Plaintiff Patrick McDonald, who resided with his grandparents. The Millers, however, refused to let their daughter into the house on account of her intoxication and disorderly behavior.

Upon her arrest, Defendant Derick Scott and Defendant Randall Richardson, both Warren police officers, transported Mrs. House to the Warren jail. Officer Richardson then completed a prisoner receiving form. The form shows that Mrs. House had a medical problem, specifically a bipolar disorder. *See* Warren Defs. Mot. Ex. D. The form also indicates that Officer Richardson concluded that Mrs. House was not potentially suicidal or actually suicidal. *See id.* Nonetheless, Plaintiffs argue that Officers Scott and Richardson as well as other unidentified agents of the City of Warren were presented with information indicating that she was suicidal. *See* Pl. Resp. Br. to Warren Defs. at 2. During her time in the Warren jail, Mrs. House claims that she attempted suicide by consuming a cellophane food wrapper. *See* Pl. Resp. Br. to Warren Defs. at 3. This attempt resulted in Mrs. House vomiting on her uniform, which jail personnel replaced. *See id.*[3]

On November 2, 2001, Mrs. House was transferred to Defendant County of Macomb's jail. Upon her arrival, a screening officer at the Macomb jail, David Jaroma, interviewed Mrs. House and completed a

1. Although not included in its caption, the third amended complaint also includes allegations against Joseph Doe Defendants working for CMS. *See* Third Amend. Compl. at ¶ 14.

2. In their reply brief, the Macomb Defendants claim that Plaintiffs' response to their motion was untimely. This contention lacks merit. According to their proof of service, the Macomb Defendants served their motion by United States Mail on May 23, 2003. Thus, contrary to their assertion, Plaintiffs' response was due not on June 13, 2003; rather, it was due on June 16, 2003. While the Macomb Defendants correctly state that Local Rule 7.1(d)(1)(B) requires responses to dispositive motions to be filed within twenty-one days of service, the Macomb Defendants failed to account for the three additional days afforded under Rule 6(e) of the Federal Rules of Civil Procedure when service is performed by United States Mail. *See* Fed.R.Civ.P. 5(b)(2)(B); Fed.R.Civ.P. 6(e); E.D. Mich. LR 7.1(d)(1)(B).

Therefore, under these circumstances, Plaintiffs had twenty-four days to file their response, and twenty-four days from May 23, 2003, was June 16, 2003. *See* Fed.R.Civ.P. 6(a). Accordingly, because Plaintiffs filed their response on June 16, 2003, it was timely.

3. Plaintiffs argue that, because jail personnel saw the vomit and replaced the uniform, these unidentified individuals knew Mrs. House attempted suicide and, as a result, knew that she was suicidal. *See* Pl. Resp. Br. to Warren Defs. at 3–4 ("the personnel at the Warren Jail were well aware of House's suicide attempt inasmuch as House vomited on her jail uniform which was removed by Warren Jail personnel."). This argument is flawed: just because jail personnel knew that Mrs. House had vomited, it does not follow that they automatically knew that the cause of the vomiting was an attempted suicide.

prisoner classification form during the interview. This form shows that Mrs. House had a medical problem, which Officer Jaroma described as depression. *See* Macomb Defs. Mot. Ex B. at 2. Additionally, while Plaintiffs contend that Mrs. House provided Officer Jaroma with information indicating that she was suicidal, the form indicates that Officer Jaroma concluded that Mrs. House was not suicidal. *See id.;* Pl. Resp. Br. to Macomb Defs. at 3.

Shortly after meeting with Officer Jaroma, Mrs. House received medical attention in the form of an evaluation by a registered nurse, Beth Bayones. Nurse Bayones was employed by Defendant CMS, which provides medical services in the Macomb jail under a contract with the County of Macomb. In examining Mrs. House, Nurse Bayones completed two forms. Nurse Bayones learned that Mrs. House suffered from manic depression and took an unknown amount of medication. *See* CMS Mot. Ex. D. Accordingly, Nurse Bayones recommended that Mrs. House undergo a further mental health examination. *See id.* Additionally, although Plaintiffs argue that Mrs. House provided Nurse Bayones with information indicating that she was suicidal, the forms indicate that Nurse Bayones concluded that Mrs. House was not suicidal. *See id.;* Pl. Resp. Br. to CMS at 5; *but see* Pl. Resp. to CMS Ex. 3 at 67 ln.21–22.

Further, on November 3, 2001, Mrs. House used the intercom system in the Macomb jail on two occasions to "turn herself in," according to another inmate in her cell as well as Officer John Shanoski, who received these calls. *See* Pl. Resp. Br. to Macomb Defs. at 4–5; Pl. Resp. Br. to CMS at 6. Plaintiffs argue that these calls to Officer Shanoski also included requests for medical attention. *See* Pl. Resp. Br. to Macomb Defs. at 4–5; *but see* Pl. Resp. to Macomb Defs. Ex. 3 at 50.

In addition, on November 3, 2001, a CMS mental health worker, Steve Emery, reviewed the information gathered by Nurse Bayones. He concurred in Nurse Bayones's assessment that Mrs. House required a further mental health evaluation but that she was not suicidal. However, before Mr. Emery had the opportunity to conduct an evaluation, Mrs. House severely injured herself by jumping off a balcony in the Macomb jail on November 4, 2001.

On December 11, 2001, Plaintiffs instituted this action. As the result of her jump, Mrs. House is quadriplegic; she is unable to care for herself and her son and is unable to provide companionship to her husband, Plaintiff Gerald House. Plaintiffs' third amended complaint included § 1983 claims as well as state tort law claims. The Court declined to exercise supplemental jurisdiction and dismissed the state tort law claims without prejudice. Before the Court are Defendants' motions for summary judgement on the remaining § 1983 claims.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);

*Martin v. Ohio Tpk. Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *See 60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *See id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See id.* at 1435.

A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *See Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, if a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *See id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the Supreme Court of the United States has stated: "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967)); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *See Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see also Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995).

## III. ANALYSIS

When "prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Napier v. Madison County,* 238 F.3d 739, 742 (6th Cir.2001) (quoting *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994)). "Pretrial detainees are analogously protected from such mistreatment under the Due Process Clause of the Fourteenth Amendment." *Napier,* 238 F.3d at 742 (quoting *Horn,* 22 F.3d at 660).

Furthermore, "psychological needs manifesting themselves in suicidal tendencies are serious medical needs for purposes of the due process analysis." *Davis v. Fentress County,* 6 Fed.Appx. 243, 249, 2001 WL 223625 (6th Cir.2001) (citing *Horn,* 22 F.3d at 660; *Barber v. City of Salem,* 953 F.2d 232, 239–40 (6th Cir.1992); *Molton v. City of Cleveland,* 839 F.2d 240, 243 (6th Cir.1988)). There is, however, "no general right of pretrial detainees to be correctly screened for suicidal tendencies." *Davis,* 6 Fed.Appx. at 249 (citing *Danese v. Asman,* 875 F.2d 1239, 1244 (6th Cir.1989)). Furthermore, there is no "generalized right of a prisoner to be protected against committing suicide." *Davis,* 6 Fed.Appx. at 249 (citing *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1096–97 (6th Cir. 1992)). Therefore, "the right at issue here is the detainee's right to reasonable protection against taking [her] own life if that detainee has demonstrated a strong likelihood that [she] will commit suicide." *Davis,* 6 Fed.Appx. at 249. To establish a violation of this right, Plaintiffs must show that Mrs. House demonstrated a strong likelihood of taking her own life and that the pertinent individuals acted with deliberate indifference, not mere negligence, to that threat. *See id.*

Deliberate indifference "describes a state of mind more blameworthy than negligence and requires more than an ordinary lack of due care." *Davis,* 6 Fed. Appx. at 249 (citing *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). To establish deliberate indifference, Plaintiff must show that Defendants had "a sufficiently culpable state of mind." *Napier,* 238 F.3d at 742 (quoting *Brown v. Bargery,* 207 F.3d 863,

867 (6th Cir.2000)). Plaintiffs must show that the pertinent individuals **knew** of and disregarded an excessive risk to Mrs. House's health or safety. *See Sperle v. Mich. Dep't of Corr.,* 297 F.3d 483, 493 (6th Cir.2002); *Crocker v. County of Macomb,* 285 F.Supp.2d 971, 976 (E.D.Mich. 2003) (Gadola, J.). In other words, "**when an official fails to act in the face of an obvious risk of which she should have known but did not, the official has not inflicted punishment in violation of the Eighth [or Fourteenth] Amendment.**" *Davis,* 6 Fed.Appx. at 250 (emphasis added); *see also Crocker,* 285 F.Supp.2d at 976.

■ In this case, viewing the facts in a light most favorable to Plaintiffs, Plaintiffs have only presented evidence that the certain individuals that came into contact with Mrs. House **should have known** that she was suicidal or otherwise facing an excessive risk to her health and safety. In other words, there is no evidence anyone actually **knew** that she was suicidal or facing some other excessive health or safety risk. In addition, the police and medical records created during the relevant period indicate that the key individuals responsible for her care and evaluation affirmatively concluded that she was not suicidal.[4] As a consequence, Plaintiffs' are not entitled to relief under § 1983: the fact that an individual should have known of an obvious risk confronting a pretrial detainee is not enough to establish deliberate indifference. *See Sperle,* 297 F.3d at 493; *Davis,* 6 Fed.Appx. at 250; *Crocker,* 285 F.Supp.2d at 976. Arguably, the failure to perceive Mrs. House as suicidal could be characterized as negligence, but it

4. Plaintiffs would have a solid case of deliberate indifference if, for example, Defendant Richardson indicated on the prisoner receiving form that Mrs. House was suicidal and then did nothing. Such evidence would show

the requisite knowledge and would suggest a desire to inflict pain so as to impose cruel and unusual punishment. *See Napier,* 238 F.3d at 742. Such evidence, however, is not present in this case.

is certainly not the type of culpability that rises to the level of § 1983 liability. *See Napier*, 238 F.3d at 742; *Davis*, 6 Fed. Appx. at 249; *Aaron v. Finkbinder*, 793 F.Supp. 734, 737 (E.D.Mich.1992) (Gadola, J.), *aff'd*, 4 F.3d 993 (6th Cir.1993).[5] Therefore, the Court concludes that, as a matter of law, Defendant Scott and Defendant Richardson as well as the identified and unidentified agents of Defendant County of Macomb, Defendant City of Warren, and Defendant CMS did not act with deliberate indifference in this case. *See* Fed.R.Civ.P. 56(c); *Crocker*, 285 F.Supp.2d at 974–77. *See also Glass v. Abbo*, 284 F.Supp.2d 700, 707 (E.D.Mich. 2003) (Gadola, J.) ("If no constitutional right would have been violated were the [plaintiff's] allegations established, there is no necessity for further inquiries." (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001))).

This conclusion vitiates Plaintiffs' § 1983 claims against the remaining Defendants. Given the absence of deliberate indifference on the part of the individuals who came into contact with Mrs. House, it cannot be said that some policy, procedure, or practice (or lack thereof) caused these individuals to act with deliberate indifference, nor can it be said that supervisors condoned, encouraged, or knowingly acquiesced in the deliberate indifference. *See Hayes v. City of Mt. Wash.*, 43 Fed. Appx. 838, 840–41 (6th Cir.2002) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999); *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir.1999)); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir.2001); *Davis*, 6 Fed.Appx. at 251; *Scott v. Clay County*, 205 F.3d 867, 869 (6th Cir.2000); *Crocker*, 285 F.Supp.2d at

977; *Bobbitt v. Detroit Edison Co.*, 216 F.Supp.2d 669, 676 (E.D.Mich.2002) (Gadola, J.). Consequently, Defendant County of Macomb, Defendant City of Warren, and Defendant CMS are entitled to summary judgment, as are Defendant Mark Hackel, the Macomb County Sheriff, and Defendant Robert Stanley, a Macomb County Deputy Sheriff.

Additionally, Defendant Hackel and Defendant Stanley are entitled to summary judgment as individuals. Defendant Hackel and Defendant Stanley had no contact with Mrs. House during the period at issue. As a result, they lacked the requisite knowledge to be held individually liable under the deliberate indifference standard. *See Sperle*, 297 F.3d at 493; *Davis*, 6 Fed.Appx. at 250; *Crocker*, 285 F.Supp.2d at 976. *See also Glass*, 284 F.Supp.2d at 707.

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendants' motions for summary judgment [docket entries 96, 98, and 122] are **GRANTED**.

**SO ORDERED.**

---

5. In *Aaron*, the plaintiff alleged that a nurse was deliberately indifferent because she misread or improperly administered medical tests and failed to take appropriate precautionary steps when she noted certain medical problems; this Court held: "This claim supports a medical malpractice suit and not a suit brought under section 1983 .... When boiled down, plaintiff's allegations are grounded in negligence and not deliberate indifference." 793 F.Supp. at 737.