Rex DAVIS, Individually as the surviving spouse of Sandra Gean Davis and Administrator of the Estate of said Sandra Gean Davis; Brandon W. Gray, Plaintiffs–Appellants,

v.

FENTRESS COUNTY TENNESSEE; Frank Officer; Patricia Officer; Ameritell Corp., Defendants–Appellees.

No. 99–6320.

United States Court of Appeals, Sixth Circuit.

March 2, 2001.

Before BATCHELDER and COLE, Circuit Judges; GRAHAM,* District Judge.

BATCHELDER, Circuit Judge.

Rex Davis brought this 42 U.S.C. § 1983 action against Fentress County, Tennessee, Sheriff Frank Officer, Deputy Patricia Officer, and Ameritel Pay Phones, Inc.,[1] on behalf of himself as surviving spouse of Sandra Gean Davis, who had hanged herself in a county jail cell, and Brandon Gray, decedent's minor son. A later amendment to the Complaint added Brandi Alexander Robers, Davis's daughter, as a plaintiff. The suit named Sheriff Officer and Deputy Officer as Defendants in their official and individual capacities and sought damages for alleged violations of decedent's constitutional rights under section 1983 and negligence under state law. The district court held that no genuine issue of material fact remained for trial and that the evidence failed to demonstrate that the Defendants had violated

---

* The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

1. The district court pleadings incorrectly identify Ameritel as Ameritell Corp.

any constitutional right of the decedent. The court granted summary judgment on Plaintiffs' section 1983 claims to Fentress County, Sheriff Officer, and Deputy Officer, and dismissed without prejudice Plaintiffs' state law claims against all Defendants. Plaintiffs timely appealed. We AFFIRM.

## I. STATEMENT OF FACTS

At approximately 8:20 p.m. on January 6, 1997, Officer Rick Hayes arrested Sandra Davis for public intoxication and took her to the Fentress County jail. Her arrest followed an evening of drinking that ended with Sandra and her husband Rex fighting as he drove her home in his truck. Sandra forced Rex to stop abruptly, jumped out of the truck, and began walking barefoot along a highway.

Deputy Patricia Officer was on duty as the jailer that night, and noted that when Davis arrived at the jail she was loud, unruly, dirty, intoxicated, and had urinated on herself. Davis said that she had been raped that evening and wanted to see her lawyer; she refused, however, to provide any booking information to either Officer Hayes or Deputy Officer.

Officer Hayes placed Davis in cell D–1, the nearest cell to the jail's booking area. As a secure cell, cell D–1 functions as the jail's "drunk tank." Unless the jail personnel opened the door to the cell, they could see into it only through "the bean hole," a small door beneath the doorknob through which the jail's staff could pass food and other items. Inspection of the cell through the bean hole required stooping down and risking having a prisoner throw food or worse through the opening. The bean hole provided the only means of inspection because a window providing visibility into the cell had been painted over. In violation of the Tennessee Corrections Institute's minimum standards for county jails that prohibit structural projections in secure cells, cell D–1 contained a phone installed at the direction of Sheriff Officer by Ameritel pursuant to a 1996 agreement under which the company agreed to provide the jail with an inmate telephone system.

While in the cell, Davis began screaming and beating on the door. She shouted "I'm going to slash my throat and there ain't a God damn thing you or nobody else is going to do about it" and demanded to speak to her doctor and her lawyer. Davis did not, however, provide Deputy Officer with the names or telephone numbers of either, and she did not–at least insofar as the record indicates–use the phone in the cell to call anyone. Deputy Officer offered Davis coffee and ice while she was in the cell and observed Davis at least every fifteen minutes in accordance with the Fentress County jail's policy and procedure manual. The manual also requires that inmates receive any needed medical attention prior to acceptance of custody. Despite Davis's behavior and statements, Deputy Officer stated that she did not believe that Davis required medical attention when she arrived at the jail.

At 9:10 p.m., Deputy Officer asked the dispatcher to call Tony Martin, an LPN and certified first responder, for assistance in assessing Sandra Davis's medical condition. Martin arrived at 9:15 and heard a woman yelling and beating on the door of cell D–1. Deputy Officer did not inform Martin that Davis had threatened to commit suicide and stated that there was nothing in the cell with which Davis could harm herself. The banging continued for three or four minutes after Martin's arrival then stopped. At this point, Martin and Deputy Officer went to cell D–1 to check on Davis and observed her through the bean hole on her knees facing the cell wall. Deputy Officer thought Davis was either passed out or

"playing possum," waiting to attack once a deputy opened the door. Martin expressed reluctance to open the cell door to check on Davis for fear of exposing himself to legal liability since he was not a jail employee.

Meanwhile, other deputies arrived at the jail, and around 9:30 p.m. a group of four people entered cell D–1. They found Sandra Davis slumped to the floor with the metal-clad phone cord around her neck. Martin ran to retrieve his medical equipment while the dispatcher called an ambulance. Two deputies performed CPR on Davis until an ambulance arrived at approximately 9:45 p.m. Davis was pronounced dead upon arrival at Fentress County Hospital.

Upon learning of his wife's suicide, Rex Davis expressed shock and said he had no knowledge that Sandra was suicidal. The record reflects that Sandra Davis had attempted suicide approximately seven months earlier. On that occasion a Sheriff's deputy had transported her from Fentress County Hospital to another medical facility.

## II. ANALYSIS

We review a district court's grant of summary judgment de novo, using the same standard under Rule 56(c) used by the district court. *Williams v. Mehra,* 186 F.3d 685, 689 (6th Cir.1999) (en banc). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, we view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsu-shita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir.1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A. Plaintiffs' Claim Against Deputy Officer in Her Individual Capacity

To succeed on a claim under section 1983, a plaintiff must demonstrate: (1) deprivation of a right secured by the Constitution or laws of the United States, (2) caused by a person acting under color of state law, (3) occurring without due process of law. *O'Brien v. City of Grand Rapids,* 23 F.3d 990, 995 (6th Cir.1994). A government official performing discretionary functions is entitled to qualified immunity in her individual capacity if her conduct does not violate constitutional standards in light of clearly established law at the time of the alleged violation. *Barber v. City of Salem, Ohio,* 953 F.2d 232, 236 (6th Cir.1992). The right claimed must be more than merely a generalized right; it must be clearly established in a particularized sense so that a reasonable official in the defendant's position knows that her actions violate that right. In short, the illegality of the challenged con-

duct must be apparent. *Danese v. Asman*, 875 F.2d 1239, 1242 (6th Cir.1989).

█ In evaluating claims of qualified immunity under section 1983, we first determine whether a constitutional violation occurred and only then determine whether the right violated was clearly established such that a reasonable person would know of it. *Williams*, 186 F.3d at 691. Therefore, we begin by identifying the contours of the substantive right allegedly violated. *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

█ When prison officials act with deliberate indifference to the serious medical needs of prisoners so that they inflict unnecessary pain or suffering, their actions violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994). Pretrial detainees enjoy analogous protection under the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Horn*, 22 F.3d at 660.

█ Case law in this circuit has established that psychological needs manifesting themselves in suicidal tendencies are serious medical needs for purposes of the due process analysis. *E.g.*, *Horn*, 22 F.3d at 660; *Barber*, 953 F.2d at 239–40 (identifying the proper inquiry in suicide cases as "whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs"); *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir.1988). Nonetheless, there is no general right of pretrial detainees to be correctly screened for suicidal tendencies. *Danese*, 875 F.2d at 1244. Nor has this court recognized a generalized right of a prisoner to be protected against committing suicide. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1096–97 (6th Cir. 1992). Against this background, the district court correctly concluded that the right at issue here is the detainee's right to reasonable protection against taking his own life *if* that detainee has demonstrated a strong likelihood that he will commit suicide.

To establish a violation of this right, Plaintiffs must demonstrate that the decedent demonstrated a strong likelihood of taking her own life and that Defendants acted with deliberate indifference to that threat. Because we construe the facts in the light most favorable to the nonmoving party for purposes of summary judgment, we assume, as the district court did, that a jury could reasonably find that Sandra Davis's statements and behavior demonstrated a strong likelihood of suicide. At issue here is whether Plaintiffs presented evidence from which a jury could reasonably find that government officials responded to this threat with deliberate indifference.

█ In *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court explained the deliberate indifference standard in the context of an Eighth Amendment claim. The term describes a state of mind more blameworthy than negligence and requires more than an ordinary lack of due care, but can be satisfied with less than acts or omissions with knowledge that harm will result. *Id.* at 835, 114 S.Ct. 1970. In *Farmer*, the Court adopted a subjective standard for determining whether an official acted or failed to act with deliberate indifference: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

the inference." *Id.* at 837, 114 S.Ct. 1970. This standard requires conscious disregard for a substantial risk of serious harm. *Id.* at 839, 114 S.Ct. 1970; *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir.1994). Accordingly, when an official fails to act in the face of an obvious risk of which she should have known but did not, the official has not inflicted punishment in violation of the Eighth Amendment. *See Farmer*, 511 U.S. at 837–38, 114 S.Ct. 1970.

▉▉ Whether Deputy Officer acted with deliberate indifference to the serious medical needs of Sandra Davis presents a mixed question of law and fact, which this court reviews de novo. *Williams*, 186 F.3d at 690. Under the *Farmer* standard, in order for her conduct to constitute deliberate indifference, Deputy Officer must not only have subjectively perceived facts from which she could draw an inference that Davis presented a substantial suicide risk, she must also have consciously disregarded that risk. We hold that Deputy Officer's response to the risk of suicide Davis presented did not amount to a conscious disregard for Davis's serious medical needs. There is no evidence in the record that Deputy Officer or anyone else associated with the jail realized that someone could hang herself with the phone cord. Indeed, Deputy Officer told Tony Martin that there was nothing in the cell with which Davis could harm herself. Deputy Officer placed Davis in the cell nearest the booking area where Officer was stationed, offered her the opportunity to call her doctor, brought her coffee and ice, checked on her at least once every fifteen minutes, and summoned LPN Tony Martin to assess her more particularized medical needs. Upon discovering Davis in the cell, officers immediately began CPR and called an ambulance. Therefore, the record demonstrates that Deputy Officer did not act with deliberate indifference to

Sandra Davis's serious medical needs. Even if, as Plaintiffs contend, some of Deputy Officer's actions as well as violations of the jail's policy manual and Tennessee's minimum standards in the jail's operation constitute negligence, *Farmer* makes it clear that mere negligence is not enough to make out an Eighth Amendment violation. 511 U.S. at 835, 114 S.Ct. 1970 (defining deliberate indifference as something more than simple negligence). *See also Davidson v. Cannon*, 474 U.S. 344, 347–48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Barber*, 953 F.2d at 239–40.

Accordingly, because the Plaintiffs cannot sustain an element of their claim on which they will bear the burden of proof at trial, namely that Davis suffered a constitutional violation, we hold that the district court properly granted Deputy Officer summary judgment in her individual capacity.

### B. Plaintiffs' Claim Against Sheriff Officer in His Individual Capacity

▉▉ Plaintiffs argue that Sheriff Officer's failure to ensure that the Fentress County jail operated in accordance with the state's minimum standards constitutes deliberate indifference. Violations of state law, however, while arguably negligent do not constitute deliberate indifference as defined in *Farmer*. The individual liability of officials under section 1983 must be based on their own unconstitutional behavior–not merely the right to control the actions of employees or the failure to act. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1990). Plaintiffs allege no affirmative act of the Sheriff that violated a constitutional right of Sandra Davis. Although violations of state minimum standards or the County's policies regarding operation of the jail may constitute negligence, Plaintiffs have not presented any

evidence indicating that Sheriff Officer acted with conscious disregard for a substantial risk that a detainee at the jail might attempt suicide. The district court properly granted summary judgment to Sheriff Officer in his individual capacity.

### C. Plaintiffs' Claim Against Defendants in Their Official Capacities

 A political subdivision is liable under section 1983 if its official policies or informal customs cause constitutional violations. *Heflin v. Stewart County, Tennessee,* 958 F.2d 709, 716 (6th Cir.1992). We equate suits against public officials in their official capacities under section 1983 with suits against the governmental entity itself. *Barber,* 953 F.2d at 237; *Marchese v. Lucas,* 758 F.2d 181, 187 (6th Cir.1985). Moreover, a governmental entity may have liability for the same actions for which officials enjoy qualified immunity. *Barber,* 953 F.2d at 237–38.

 The legal standard for establishing an entity's liability under section 1983 in a case of a pretrial detainee's jail suicide requires proof of a "deliberate and discernible city policy to maintain an inadequately trained police department, or nonsuicide-proof, inadequately designed and equipped jails[.]" *Molton,* 839 F.2d at 246. Plaintiffs have presented no evidence of this sort. Although a November 1996 inspection turned up concerns about the jail's staffing levels and blocked windows for observing cells, nothing in the record indicates that the County contemplated a potential suicide as a result of these problems or that the County failed to take adequate measures to remedy these conditions. Therefore, there is no basis on which the County may be found liable, and the district court properly granted summary judgment for Defendants in their official capacities.

### D. Plaintiffs' State Law Claims

 A district court may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S .C. § 1367(c)(3). This court has held that "generally, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Landefeld v. Marion Gen. Hosp., Inc. .,* 994 F.2d 1178, 1182 (6th Cir.1993) (citation and internal quotations omitted). A district court's decision not to exercise supplemental jurisdiction is reviewed for abuse of discretion. *Valot v. Southeast Local Sch. Dist. Bd. of Educ.,* 107 F.3d 1220, 1230 (6th Cir.1997).

 The district court dismissed Plaintiffs' state law claims against all Defendants without prejudice on the ground that summary judgment disposed of all claims over which the court possessed original jurisdiction. Because the district court did not err in granting Defendants summary judgment on their claims arising under federal law, its dismissal of the remaining state law claims did not constitute an abuse of discretion.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court granting summary judgment to all defendants.