**Christina CROCKER, Personal Representative of the Estate of Carl William Tarzwell, Jr., Plaintiff,**

v.

**COUNTY OF MACOMB, Mark Hackel, Deputy Gloude, Deputy D. Santini, Elizabeth Carver, Ronald Murphy, and Michael Dixon, Defendants.**

No. CIV. 01–40240.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 30, 2003.

Mark R. Bendure, Thomas R. Present, Bendure & Thomas, Detroit, Brian M. Legghio, Mount Clemons, MI, for Christina Crocker, personal representative of the estate of Carl William Tarzwell, Jr., deceased, plaintiff.

Frank W. Brochert, Kristen M. Tolan, Plunkett & Cooney, Bloomfield Hills, Peter W. Peacock, Plunkett & Cooney, Mount Clemens, MI, for Macomb, County of, Mark Hackel, Sheriff, Gloude, Deputy, D. Santini, Deputy, Elizabeth Carver, Corrections officer, Ronald Murphy, Corrections officer, Michael Dixon, Corrections officer, defendants.

### OPINION AND ORDER GRANTING SUMMARY JUDGMENT

GADOLA, District Judge.

This civil action, brought pursuant to 42 U.S.C. § 1983, concerns the suicide of Carl William Tarzwell, Jr., in the Macomb County Jail. Before the Court is the summary judgment motion of Defendants Macomb County, Hackel, Carver, Murphy, and Dixon.[1] Plaintiff filed a response, and Defendants filed a reply brief. The Court elects to proceed without a hearing. *See* E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the Court will grant the motion.

## I. BACKGROUND

In the early morning of June 20, 2001, Mr. Tarzwell drove to the home of Jere Roske, the maternal grandmother of one of Mr. Tarzwell's daughters, to pick up one of his other daughters. Ms. Roske noticed that Mr. Tarzwell had been drinking and would not allow him to drive the daughter home. Thereafter, Ms. Roske called the police for help.

The police arrived on the scene and asked Mr. Tarzwell for his identification. He claimed that he did not have any identification and gave the police a bogus name and birth date. Mr. Tarzwell's girlfriend then arrived, however, and provided the police with his correct name and birth date. A background check revealed that Saint Clair County had an outstanding warrant for Mr. Tarzwell. The police issued a misdemeanor citation to Mr. Tarzwell for presenting false identification and placed him under arrest for the outstanding warrant.

At 2:50 a.m. on June 20, 2001, the police and Mr. Tarzwell arrived at the Macomb County Jail. Mr. Tarzwell was received by Defendant Murphy. Defendant Murphy observed that Mr. Tarzwell smelled of alcohol but could walk and talk without difficulty. Mr. Tarzwell first asked Defendant Murphy to retrieve his hat that was left with the arresting officer. Mr. Tarzwell then asked to use a telephone. Defendant Murphy placed Mr. Tarzwell in a holding cell with a telephone and explained how to make a call. Mr. Tarzwell proceeded to make more than twenty telephone calls to numerous parties.

At 3:15 a.m., Defendant Dixon performed a foot patrol of the area of the jail in which Mr. Tarzwell was held. Defendant Dixon accounted for Mr. Tarzwell but did not notice anything problematic. Then, at approximately 4:30 a.m., Mr. Tarzwell was discovered with a telephone cord around his neck. Defendant Carver immediately called for medical help, but Mr. Tarzwell had already succeeded at committing suicide.

---

1. Pursuant to the Court's order and partial judgment of October 10, 2002, Defendants Gloude and Santini have been dismissed from this civil action.

This action was then instituted on August 30, 2001. Pursuant to 42 U.S.C. § 1983, Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs and thereby violated the Fourteenth Amendment's Due Process Clause.[2]

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Tpk. Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *See 60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *See id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See id.* at 1435.

A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *See Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, if a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *See id.; Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the Supreme Court of the United States has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d

---

**2.** The complaint also contains state law claims (e.g., gross negligence). However, Plaintiff's response to Defendants' summary judgment motion concedes that Plaintiff is not entitled to relief on the state law claims; the response states "Plaintiff does not object to dismissal of [the] state law claims." *See* Pl. Br. at 2 n. 2; *see also* Def. Br. at 18–19. Therefore, the Court will grant summary judgment for Defendants with respect to the state law claims.

569 (1968); *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967)); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *See Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see also Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995).

## III. ANALYSIS

■ "'Where prison [or jail] officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment.'" *Napier v. Madison County,* 238 F.3d 739, 742 (6th Cir.2001) (quoting *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994) (citing *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))). "'Pretrial detainees are analogously protected from such mistreatment under the Due Process Clause of the Fourteenth Amendment.'" *Napier,* 238 F.3d at 742 (quoting *Horn,* 22 F.3d at 660).

■ The United States Court of Appeals for the Sixth Circuit has held "that psychological needs manifesting themselves in suicidal tendencies are serious medical needs for purposes of the due process analysis." *Davis v. Fentress County,* 6 Fed.Appx. 243, 249 (6th Cir. 2001) (citing *Horn,* 22 F.3d at 660; *Barber v. City of Salem,* 953 F.2d 232, 239–40 (6th Cir.1992); *Molton v. City of Cleveland,* 839 F.2d 240, 243 (6th Cir.1988)). There is, however, "no general right of pretrial detainees to be correctly screened for suicidal tendencies." *Davis,* 6 Fed.Appx. at 249 (citing *Danese v. Asman,* 875 F.2d 1239, 1244 (6th Cir.1989)). Furthermore, there is no "generalized right of a prisoner to be protected against committing suicide." *Davis,* 6 Fed.Appx. at 249 (citing *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1096–97 (6th Cir.1992)). Therefore, "the right at issue here is the detainee's right to reasonable protection against taking his own life *if* that detainee has demonstrated a strong likelihood that he will commit suicide." *Davis,* 6 Fed.Appx. at 249 (emphasis added). To establish a violation of this right, Plaintiff must show (1) that Mr. Tarzwell demonstrated a strong likelihood of taking his own life and (2) that Defendants acted with deliberate indifference, not mere negligence, to that threat. *See id.* Here, Plaintiff has not satisfied either part of this inquiry.

■ On the night in question, Mr. Tarzwell did not demonstrate a strong likelihood of taking his own life. Mr. Tarzwell was not acting in any abnormal manner that would indicate that he was suicidal. Although he had been drinking, he was coherent enough: to provide false information to the police; to walk and talk without difficulty when he arrived at the jail; to remember he left his hat with the arresting officer; to ask that the hat be retrieved (thereby suggesting that he intended on using the hat in the future); to request the use of a telephone; to remember telephone numbers; and to complete more than twenty telephone calls. Such actions demonstrate an awareness of the present and a concern for the future indic-

ative of an individual wanting to live—not die. Plaintiff has not offered any evidence to counter the conclusion that Mr. Tarzwell presented himself as a sane person intent on living rather than a disturbed individual on the verge of suicide. *Cf. Perkowski v. City of Detroit,* 794 F.Supp. 223, 224, 227 (E.D.Mich.1992) (Gadola, J.) (granting summary judgment for defendants in jail suicide case with similar facts). Therefore, Plaintiff is not entitled to relief because Plaintiff has failed to show that Mr. Tarzwell demonstrated a strong likelihood of taking his own life.

Nonetheless, even assuming that Mr. Tarzwell demonstrated a strong likelihood of taking his own life, Plaintiff has failed to show that the individual Defendants in this matter acted with deliberate indifference. Deliberate indifference "describes a state of mind more blameworthy than negligence and requires more than an ordinary lack of due care." *Davis,* 6 Fed. Appx. at 249 (citing *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). To establish deliberate indifference, Plaintiff must show that Defendants had " 'a sufficiently culpable state of mind.' " *Napier,* 238 F.3d at 742 (quoting *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir.2000)). In other words, Plaintiff must show that Defendants knew of and disregarded an excessive risk to Mr. Tarzwell's health or safety. *See Sperle v. Mich. Dep't of Corr.,* 297 F.3d 483, 493 (6th Cir.2002) (citing *Ewolski v. City of Brunswick,* 287 F.3d 492, 513 (6th Cir. 2002)). Thus, Defendants would be suffi-

ciently culpable if Defendants knew that Mr. Tarzwell faced a substantial risk of serious harm and Defendants acted " 'in a manner demonstrating reckless or callous indifference toward the individual's rights.' " *Sperle* 297 F.3d at 493 (quoting *Ewolski,* 287 F.3d at 513).

With respect to Defendants Hackel and Carver, they did not have any knowledge of any risk facing Mr. Tarzwell. Defendant Hackel, the Macomb County Sheriff, was not even present at the jail on the night in question,[3] and, although Defendant Carver was on duty, she had absolutely no contact with Mr. Tarzwell before his death. Given this lack of actual knowledge of Mr. Tarzwell's situation, Defendants Hackel and Carver did not—and could not—act with deliberate indifference toward Mr. Tarzwell. *See Davis,* 6 Fed. Appx. at 250 ("when an official fails to act in the face of an obvious risk of which she should have known but did not, the official has not inflicted punishment in violation of the Eighth [or Fourteenth] Amendment.").

Further, although Defendants Murphy and Dixon had contact with Mr. Tarzwell before his death, there is no evidence that they actually knew that Mr. Tarzwell faced a serious risk of suicide. The interaction of Defendants Murphy and Dixon with Mr. Tarzwell gave them no indication that Mr. Tarzwell was about to commit suicide.[4] *See id.* Furthermore, even assuming that Defendants Murphy and Dixon were somehow responsible for Mr. Tarzwell's suicide, they are—at most—guilty of misjudgment

---

3. Plaintiff's response concedes that Defendant Hackel cannot be held liable under the deliberate indifference standard. *See* Pl. Resp. at 2 n. 3 & 14 n. 8

4. At the time of his suicide, Mr. Tarzwell had scars on his inner wrists suggestive of an attempted suicide on some prior occasion. However, while the scars were visible during a post-suicide examination at the hospital, *see*

Pl. Resp. Ex. E at 2, Plaintiff has not presented any evidence showing that the scars, which were old and healed, were visible to Defendants Murphy and Dixon at the jail. Moreover, even if Defendants Murphy and/or Dixon saw these old and healed scars, there is no evidence that they actually knew that Mr. Tarzwell was contemplating suicide with a telephone cord on the night in question.

or negligence and not of reckless or callous indifference toward Mr. Tarzwell. *See Sperle* 297 F.3d at 493; *Napier*, 238 F.3d at 742. As a result, Defendants Murphy and Dixon cannot be held liable under the deliberate indifference standard. Consequently, the Court will grant summary judgment for the four individual Defendants.

■ Finally, as to Defendant Macomb County, Plaintiff has not shown that Defendant Macomb County had a " 'deliberate and discernible [county] policy to maintain an inadequately trained police department or nonsuicide-proof, inadequately designed and equipped jails.' " *Davis*, 6 Fed.Appx. at 251 (quoting *Molton*, 839 F.2d at 246). At best, Plaintiff merely points to hypothetical policies that may have prevented Mr. Tarzwell's suicide. *See* Pl. Resp. at 19. Plaintiff's suggestions, made with 20/20 hindsight, on how to better prevent this particular suicide do not equate to a deliberate and discernible county policy which caused Mr. Tarzwell's suicide and for which the De-

fendant Macomb County should be held liable. *See Davis*, 6 Fed.Appx. at 251.[5] Furthermore, when a plaintiff alleges that a municipal defendant has failed to properly train the individual defendants, the municipal defendant cannot be held liable under § 1983 when the plaintiff has failed to establish a constitutional violation by the individual defendants. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir.2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)); *see also* Def. Br. at 13–17. The individual defendants in this case, as stated *supra*, did not violate Mr. Tarzwell's constitutional rights. Therefore, Plaintiff is not entitled to relief on its failure-to-train argument against Defendant Macomb County. Thus, the Court will grant summary judgment for Defendant Macomb County.[6]

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendants' motion for sum-

---

**5.** Plaintiff's reliance on the Supreme Court of Michigan's decision in *Jackson v. City of Detroit*, 449 Mich. 420, 537 N.W.2d 151 (1995), and three prior suicides at the Macomb County Jail is misplaced. In *Jackson*, which was a § 1983 jail suicide case, overhead bars in Detroit jail cells were used in a majority of the 128 attempted jail suicides over a five-year period. *See id.* at 434–35, 537 N.W.2d at 157–58. In light of this fact, the Supreme Court of Michigan held that summary judgment was inappropriate because Detroit was deemed to be aware of the danger of placing individuals known to have suicidal tendencies in cells with such overhead bars. *See id.* The situation here is drastically different from *Jackson* for three reasons. First, *Jackson* dealt with a situation in which the individuals had known suicidal tendencies; such is not the case here, as detailed *supra*. Second, in this case, unlike the large number of attempted suicides in *Jackson*, three suicides occurred at the Macomb County Jail in the twelve months before Mr. Tarzwell's suicide, and these were the only suicides that oc-

curred at the Macomb County Jail in the five years preceding Mr. Tarzwell's suicide. *See* Pl. Br. Ex. B. Third, Plaintiff fails to prove that any of these three suicides took place in the same or similar cells with the cord of an available telephone. Two of the suicides in the Macomb County Jail resulted from the individuals using air vents to hang themselves, and the other resulted from the individual jumping from a second floor balcony. *See id.* The crux of the reasoning in *Jackson* was the similarity of the cell conditions and the method of the suicide. Such similarity is not present with respect to Mr. Tarzwell's suicide and the three other suicides at the Macomb County Jail. *See also* Def. Reply. Br. at 5.

**6.** This analysis of Defendant Macomb County's liability also disposes of any claims against the individual Defendants in their "official capacity." *See Davis*, 6 Fed.Appx. at 251 (citing *Barber*, 953 F.2d at 237; *Marchese v. Lucas*, 758 F.2d 181, 187 (6th Cir.1985)); *see also* Def. Br. at 16 n. 9.

mary judgment [docket entry 25] is **GRANTED.**

**SO ORDERED.**

### *JUDGMENT*

This civil action having come before this Court, the Honorable Paul V. Gadola presiding, the issues having been fully presented, the Court being fully advised in the premises, and a ruling having been duly rendered, **IT IS ORDERED AND ADJUDGED** that Plaintiff **TAKE NOTHING** from Defendants and that this civil action against Defendants be **DISMISSED** on the merits.