**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0355n.06

**No. 13-4257**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| KENNETH L. MANTELL, as Administrator for the Estate of Kenneth R. Mantell, | ) ) ) | **FILED** |
| Plaintiff-Appellant, | ) ) | May 12, 2015 DEBORAH S. HUNT, Clerk |
| v. | ) ) ) ) | |
| HEALTH PROFESSIONALS LTD., et al., | ) ) | ON APPEAL FROM THE UNITED |
| Defendants, | ) ) | STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF |
| and | ) ) | OHIO |
| PORTAGE COUNTY, OHIO; OFFICER KREIDER, Corrections Officer, Portage County Sheriff's Office; DAN CARDINAL, Portage County Sheriff's Office; and JOHN DOES 1-10, Various Unknown Officers/Deputies, | ) ) ) ) ) ) | |
| Defendants-Appellees. | ) | |

Before: BOGGS and GRIFFIN, Circuit Judges; HOOD, District Judge.[*]

**HOOD**, District Judge. Kenneth R. Mantell ("Mantell") died on July 5, 2010, as a result of injuries he received when he hanged himself at the Portage County Jail. His father, as the personal representative of his son's estate ("Plaintiff"), filed this lawsuit under 42 U.S.C. § 1983 alleging that Defendants' deliberate indifference to his son's serious medical needs resulted in a violation of his son's rights under the Fourth, Eighth and Fourteenth Amendments to the United

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

States Constitution, by virtue of both the actions of the individual defendants and of Portage County's policies or customs under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Plaintiff also alleged a number of violations of Ohio state law, including claims of wrongful death. Specifically, he alleges that the officers and the county are liable for his son's death because the officers failed to act appropriately on his estranged girlfriend's warning that he might try to harm himself and had previously attempted suicide.

The district court granted summary judgment in favor of Portage County and its officers, Nathan Kreider and Daniel Cardinal, on all federal and state-law claims. Plaintiff appeals the decision to grant summary judgment in favor of these defendants with respect to his claims arising under 42 U.S.C. § 1983 and his state-law claims. For the reasons stated below, we affirm.

## I.

On May 20, 2010, Officer Jon Meade Hurley of the Streetsboro Police Department arrested Mantell on charges of domestic violence and child endangerment after Mantell was involved in a fight in a parking lot with his estranged girlfriend, Lindsey Hamilton. Hurley took Mantell to the Streetsboro police station for processing where Mantell told intake officers of a prior suicide attempt and a family history of suicide but denied any current intent to harm himself.

Hamilton came to the police station where she completed some paperwork and spoke with Officer Hurley in the lobby. There, Officer Hurley "went over with her the procedure, what was going on, what part she needed to take in it" as the victim of a crime. [Deposition Of Officer Jon Meade Hurley, DE 156-1 at 43, ll. 2–4; PageID#: 1376.] According to Hurley, as Hamilton exited the police station, "she [told Hurley] to keep an eye on [Mantell]. And [Hurley]

asked her why, and she said that he's had suicidal thoughts in the past, and then she left." [*Id*. at 43, ll. 8–11; PageID#: 1376.]

As Hamilton describes their conversation, "I just flat out told him, I told him, I'm, like, He needs to be on suicide watch." [Deposition Of Lindsey Hamilton, DE 155-1 at 57, ll. 2–3; PageID#: 1189.] She testified that, when asked by Hurley why she thought that Mantell needed to be on suicide watch, she

> . . . told him he's had prior – prior happenings with it, prior discussions about it. I knew that he was suicidal. I knew he's attempted it before, and just because of his state of mind he was in, he was so angry, and usually whenever he was that angry and that irate and with that much rage, like his whole thinking in his head was just that: It's easier if I'm not here.

[*Id*. at 57, ll. 9–18; PageID#: 1189.] She clarified by stating "I just told him that I knew that he's attempted suicide before . . ." and "I just told him that he needs to be on suicide watch and that I knew that he had prior attempts." [*Id*. at 62, ll. 12–13; PageID#: 1194; DE 155-1 at 72, ll. 5–7, PageID#: 1204.]

Mantell was transferred to the Portage County jail, and Deputy Nathan Kreider collected Mantell's basic information, then turned Mantell over to the intake nurses for an initial health screening. After Mantell's initial screening and pat-down, Hurley told Kreider and Kreider's supervisor, Sergeant Daniel Cardinal, that Hamilton had a concern that Mantell might be suicidal or might hurt himself. Kreider acknowledged that he had heard this by saying "okay" to Cardinal. [Deposition of Nathan Kreider, DE 157-1 at 47, ll. 15–16; PageID#: 1472.] Kreider did not ask Hurley any follow-up questions because

> Hurley did not indicate – did not seem to indicate that there was any immediate danger. And the observations we made of [Mantell] showed no deception, no – he answered all of his questions point blank. He didn't hesitate, when the nurse asked

him "Are you feeling suicidal or like hurtin' yourself or somebody else?"[1]

[*Id*. at 50, ll. 4, 8–15; PageID#: 1475.]  While Kreider intended to tell the nurse what Hurley had said, at no time did he convey that information to the nurse because he was called away to another task and by the time he returned the nurse had completed her assessment of Mantell.[2] Kreider did not try to find the nurse at that point because the nurses had completed their assessment and Mantell had not "presented that he was in any imminent danger to hurt himself." [*Id*. at 69, ll. 10–12; PageID#: 1494.]

Tamara Dalesandro and Rochelle Balk were the nurses who encountered and screened Mantell on May 20, 2010.  The nurses made both an initial screening and a full assessment of Mantell.  During the full assessment conducted by Dalesandro, Mantell was very calm and reported treatment for depression and an attempted suicide by overdose in 2006 but denied any then-current suicidal impulse.  Dalesandro found no reason to place him on any kind of observation or watch.  In her deposition, Dalesandro states that, if she had been told that Hamilton told Hurley that "[Mantell] will hurt himself," she would have put Mantell on behavior watch at a minimum and, possibly, suicide watch.  [Deposition of Tamara L. Dalesandro, DE 158-1, at 71,  ll. 2–3 and 6–7; PageID#: 1620.]  Similarly Balk would have placed him on suicide watch or, at the very least, behavior watch under those circumstances.  Had Mantell been placed on suicide watch, he would have been kept in a stripped cell in the booking area within sight of

---

[1] Kreider stated that he knew from his training that young, white males with little to no experience within the corrections system pose a heightened suicide risk when compared with others in the same population and, especially in the first 24 hours after arrest, that the risk is heightened when domestic violence charges are at issue, and that Mantell fit the profile for that increased risk.

[2] Kreider believed that he should have relayed the information received from Hurley to the nurse.

officers at all times; had he been placed on behavior watch, Mantell would have been monitored at intervals of 15 minutes or less. In either case, Mantell would have been seen by a psychiatrist within 24 hours. As it was, Mantell was placed in the general population at the jail.

While held at both the police station and the jail, Mantell called his family and friends repeatedly. He appeared highly agitated when a restraining order was entered during his video arraignment at 1:00 p.m. on May 21, 2010.

After the arraignment, Mantell continued calling a friend, Jodie Davis, until Davis quit taking his calls. At the time, there were approximately 40 inmates in the day room, and Portage County Corrections Officer William Robert Tench was the only officer assigned to the pod. At 3:00 p.m., Mantell was chastised by Tench for using a towel and paper to block out light from the window and mirror lights in his cell. Mantell complied with Tench's request that he take down the towel and paper. Shortly thereafter, Tench opened the cells so that the inmates could use the day space, and Mantell again made efforts to reach family and friends by telephone. Tench told Mantell that he would have to purchase a phone card from the commissary then went to assist another inmate with an attorney visit as Mantell walked back to the phones. Tench later explained to Mantell that he had to give Mantell a written warning for covering the window and mirror lights in his cell. Mantell acknowledged the warning and walked away, and Tench went to deal with a minor disturbance in the day room. Approximately ten minutes later, another inmate yelled that someone had hanged himself in his cell.

Tench found Mantell in his cell, hanging from a sheet at the foot of the bunk bed. Despite resuscitation attempts, Mantell never regained consciousness and died on July 5, 2010, at the age of twenty-six, as a result of his injuries.

Following Mantell's death, Plaintiff brought suit under 42 U.S.C. § 1983 and Ohio state law against Portage County, Kreider, Cardinal (collectively, "Defendants"), and a number of other defendants who are not before this court on appeal, seeking damages arising from the events leading to Mantell's death.[3] On September 27, 2013, the district court granted Defendants Portage County, Kreider, and Cardinal's Motion for Summary Judgment, holding that the undisputed material facts did not support Plaintiff's claim that Mantell's constitutional rights were violated and that Plaintiff's claims under state law failed as a matter of law.[4] This appeal followed.

**II.**

We review de novo a district court's grant of summary judgment. *Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009) (citing *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 374 (6th Cir. 2007)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[3] Plaintiff's complaint named other Portage County officers and associated entities as defendants, along with the City of Streetsboro, Hurley, and the health-care providers contracted to provide medical services to detainees at the Portage County Jail. The claims against the Portage County officers and entities, other than Portage County, Kreider, and Cardinal, as well as the claims against the City of Streetsboro, Hurley, and some of the health care providers were dismissed by stipulation of the parties. The district court granted the Motion for Summary Judgment filed by Defendants Rochelle Balk, Correctional Healthcare Companies, Inc., Tammy Dalesandro, Health Professionals, Ltd., Kelly McElhiney, and Diane Shulik and dismissed all claims against them in the same opinion as it dismissed the claims against Defendants.

[4] Plaintiff also argues on appeal that the district court erred in granting Portage County, Kreider, and Cardinal's Motion to Strike the report and affidavit of Plaintiff's opinion witness, Lindsay M. Hayes, offered in support of Plaintiff's response to Defendants' Motion for Summary Judgment. Plaintiff intended to offer Hayes's opinion testimony as an expert in the prevention of suicide in detention facilities with respect to alleged defects in Portage County's suicide prevention policies and training and the role they played in Mantell's death. As we affirm the district court's decision to dismiss the claims against Portage County under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), in the absence of a constitutional violation by the Portage County officers, Cardinal and Kreider, Plaintiff's argument is moot.

R. Civ. P. 56(a). When determining whether the movant has met this burden, we view the evidence in the light most favorable to the nonmoving party. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007) (citing *Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006)). "'[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "A mere scintilla of evidence is insufficient to create a material question of fact and defeat a motion for summary judgment; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011) (quoting *Anderson*, 477 U.S. at 252).

### III.

Prison officials may be held civilly liable under § 1983 if they are deliberately indifferent to the serious medical needs of convicted prisoners or pretrial detainees. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The "deliberate indifference" standard of liability "has both an objective and a subjective component." *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). The objective component requires proof that a prisoner's medical need is "'sufficiently serious.'" *Id*. at 424 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component requires proof of three elements: (1) the prison official subjectively perceived facts from which to infer a substantial risk to the prisoner; (2) the official did in fact draw the inference; and (3) the official disregarded that risk. *Id*. (citing *Comstock*, 273 F.3d at 703). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious

consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)).

In the prisoner-suicide context, we recognize that proof of a prisoner's psychological needs manifesting themselves in suicidal tendencies with "a strong likelihood that he would attempt to take his own life" are sufficiently serious for purposes of the objective component. *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005) (quoting *Barber v. City of Salem*, 953 F.2d 232, 239–40 (6th Cir. 1992)); *see also Perez*, 466 F.3d at 424. The subjective component is satisfied with proof that a prison official drew an inference from the available facts that there was a "strong likelihood" of prisoner suicide, but then disregarded that risk by failing to take adequate precautions to mitigate the risk. *Gray*, 399 F.3d at 616. Thus, to be held liable, "a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Linden v. Washtenaw Cnty.*, 167 F. App'x 410, 421 (6th Cir. 2006) (quoting *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000)).

For the purposes of the objective component of our inquiry, we assume without deciding that Mantell's psychological needs manifested themselves in suicidal tendencies with "a strong likelihood that he would attempt to take his own life." *See Gray*, 399 F.3d at 616. However, we see no proof from which a reasonable finder of fact could determine that either Kreider or Cardinal perceived facts from which to infer a substantial risk to Mantell during their interactions with him and, in fact, drew that inference. Thus, Plaintiff has failed to bear his burden with respect to the subjective component of the test. Kreider knew that Hamilton thought Mantell might be suicidal and that Mantell fit a profile of individuals more likely to commit suicide while incarcerated than others. However, Kreider also observed Mantell and based his actions on the fact that Mantell presented with a calm, compliant demeanor and denied any desire to harm or

kill himself during his suicide assessment with a nurse, even while disclosing to her his personal and family history with respect to suicide. In the absence of some facts from which a "substantial" risk could be perceived, neither Kreider nor Cardinal could be held to have perceived such a risk and disregarded it in violation of the Eighth or Fourteenth Amendments to the Constitution.

The case before us is distinguishable from the facts in *Coleman v. Parkman*, 349 F.3d 534 (8th Cir. 2003), and *Cavalieri v. Shepard*, 321 F.3d 616 (7th Cir. 2003), which Plaintiff urges us to consider as persuasive authority. In *Coleman* and *Cavalieri*, officers were not only advised by witnesses that the inmates in question were at risk of suicide and had threatened to commit suicide at or near the time of their arrest, or to kill themselves if jailed, but there was also evidence from which a jury could conclude that officers were aware of requests for assistance or unusual or erratic – even patently suicidal – behavior by the inmates. *Coleman*, 349 F.3d at 539; *Cavalieri*, 321 F.3d at 619. By contrast, Kreider and Cardinal had only a bald report of concern on the part of Mantell's estranged girlfriend and Mantell's own report, made during his medical assessment, of treatment for depression and a single suicide attempt some five years in the past. There was no immediate report or sign of unusual or worrisome behavior to belie their observations of his calm demeanor during intake or his statement to the nurse that he was not, at that time, suicidal. At best, with respect to Kreider and Cardinal's failure to pass along information about Hamilton's statement to the nursing staff, Plaintiff here has demonstrated nothing more than the officers' "mere negligence[, which] is not enough to make out an Eighth Amendment violation." *Davis v. Fentress Cnty.*, 6 F. App'x 243, 250 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 835). On the undisputed facts available to the district court and presented on appeal, we conclude that no jury could reasonably conclude that Kreider or Cardinal drew an

inference from the available facts that there was a "strong likelihood" of prisoner suicide, let alone that they disregarded that risk by failing to take adequate precautions to mitigate the risk. *Gray*, 399 F.3d at 616. Summary judgment was appropriate.

In the absence of any constitutional violation, the district court did not need to further consider Defendants' claim of qualified immunity, nor do we. *See Ashcroft v. al-Kidd,* 131 S. Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (holding that an official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct). Summary judgment in favor of Defendant Portage County on Plaintiff's claims that its policies or customs gave rise to a constitutional violation under 42 U.S.C. § 1983 was also appropriate in the absence of a constitutional violation by its officers. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the [municipality] might have *authorized* [unconstitutional conduct] is quite beside the point.") (addressing action for damages under *Monell*). We affirm the district court's holding that Plaintiff has failed to establish a constitutional violation.

## IV.

Finally, we need not and will not consider Plaintiff's argument that the district court erred when it held that Plaintiff's state-law claims for (1) willful, wanton, and reckless conduct, (2) wrongful death, and (3) survivorship failed as a matter of law. Whether the district court correctly decided the issues or not, the district court reached its decision based on Defendants' argument that no willful, wanton, and reckless conduct claim could stand alone under Ohio law and that, to the extent that Plaintiff sought relief under Ohio's law of wrongful death and

survivorship on the grounds that Defendants acted willfully, wantonly, and recklessly, the claims failed upon application of state law.  Plaintiff offered no response to these arguments before the district court, and "an argument not raised before the district court is waived on appeal to this Court." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

## V.

For all of the reasons stated above, we **AFFIRM** the judgment of the district court.